On Return, to Remand

TYSON, Judge.
This cause was remanded to the Circuit Court of Russell County, Alabama, pursuant to the opinion of the Supreme Court of Alabama in Daniel v. State, 459 So.2d 942 directing that a hearing be held in the Circuit Court on the ground of incompetency of trial counsel or in the alternative, that an evidentiary hearing be held, with findings of fact to be made as to the competency vel non of counsel.
The Circuit Court of Russell County has filed a return in this court after a full hearing on the merits of the appellant’s contentions.
At the hearing, competent counsel was appointed to represent the appellant and testimony taken from both of the attorneys who had been at first retained, and then subsequently appointed by the Circuit Court to represent the appellant at his trial, the Honorable Ruben King and the Honorable James Curtis Bernard, as well as the mother and sister of the appellant. The trial court then entered its order making specific findings of fact and conclusions of law as directed by the orders of the Alabama Appellate Courts as aforesaid.
I
The order and judgment of the Circuit Court is found in the remand and sets forth the following findings: (R. 83-86).
“The defendant was originally represented by Hon. Marcel E. Carroll, Attorney at Law, Montgomery, Alabama, and a preliminary hearing scheduled in the District Court of Russell County, Alabama on February 12, 1981. Since an indictment had been returned against the defendant prior to that date, the defendant was arraigned in the Circuit Court of Russell County, Alabama on the same date, February 12, 1981. Since Mr. Carroll was not present either in the District Court or Circuit Court, the Hon. J. Curtis Bernard was appointed by the Court at *945 that time to assist hired counsel, Marcel E. Carroll.
“On February 12, 1981 Hon. Marcel E. Carroll mailed to this Court a notice of representation which limited his representation of the defendant after the arraignment phase of the case. This notice was received by the Court February 13, 1981 at 11:19 A.M.
“Subsequently the Hon. Ruben E. King, Attorney at Law, Montgomery, Alabama gave formal notice to the Court that he was retained as counsel and became attorney of record for the defendant.
“Subsequently, with the consent of retained counsel, Ruben E. King, Mr. Bernard remained .as appointed counsel to assist in preparing the case for trial on a local level.
“On or about October 19, 1981, after the defendant hád been examined locally by Dr. Robert A. Rose, Licensed Psychologist, and by Bryce Hospital, and returned, the Court was advised that Mr. King would be withdrawing from the case and that the family of defendant had contacted another attorney in Montgomery, Alabama. At that time, Mr. King was also appointed to represent defendant in addition to J. Curtis Bernard. Subsequently, Hon. Ruben King advised the Court that his services were terminated by the defendant’s mother, Lillie Daniel, and that Hon. Charles Price, Montgomery, Alabama had been retained. Mr. Price was never in contact with the Court, nor retained to the knowledge of this Court.
“Trial was held subsequently and upon a review of the original record and the subsequent hearing on the competency of counsel, the Court finds as follows:
“1. That both attorneys had the opportunity and availed themselves of this, to review the entire file of the District Attorney of Russell County regarding the evidence available to the State whether culpatory or exculpatory.
“2. That the attorneys visited the scene of the crime making inquiries and interviews seeking other possible witnesses who might be of assistance to them. Mr. Bernard made several trips to Hurtsboro and the vicinity of the crime scene to determine whether any evidence was available in the defense of this cause.
“3. That counsel for the defendant, iii preparation for the possible defense of insanity, petitioned the Court for examinations of the defendant by both the East Alabama Mental Health Clinic and Bryce Hospital. The findings of both facilities were reviewed by counsel, and after such review, determined that they could not prevail with such defense. Further, the Court finds that defense counsel contacted members of the defendant’s family regarding their appearance for trial to give testimony as to the mental condition of the defendant but that the family members did not respond.
“4. That both counsel, at one time or another, during the pendency of this case were employed by the defendant or his family, and were also appointed at some juncture of the trial in order that this case could proceed in an orderly process, the appointment of Mr. King occurring only when it was brought to the attention of the Court that the family of the defendant was attempting to employ a third and different Montgomery attorney who would seek still another continuance.
“5. That during the course of the original trial, which was presided over by the undersigned Judge, only one overt event occurred that indicated any dissension between counsel as to the course of the trial. This occurred in the testimony of the witness, Ed Segar, P.H.D. (P 374 transcript) when Mr. Bernard wished to stipulate to the qualifications of the witness and Mr. King did not Wish to do so. The Court was of the opinion then, and so finds now, that this occurred simply because it had not been discussed by counsel earlier, and the stipulation, whether made or not, was not material and had no bearing on the outcome of the case.
*946 “During the sentence phase of the trial Mr. Bernard stated (R-426) that there was a conflict in the desired methods to be used in the defense of the accused and he felt this worked to the defendant’s detriment. The Court knew then and so finds now that Mr. King was the lead counsel in this case and that there was no apparent conflict reflected to the Court in any of its proceedings hereunder which affected the outcome of this trial.
“After the trial of this cause, a claim for attorneys fee to be paid by the State was made by Mr. Bernard and approved by the Court. Upon determining, after the trial, that there was some question of a fee possibly coming to Mr. Bernard through Mr. King, the parties were advised that the State would be subrogated as to the rights of this fee up to the amount paid by the State. There was no award of attorneys fees to Mr. King by the Court or State.
“The Court finds that there was never any indication in the conduct of the attorneys which reflected dissension in counsel and their actions in court were in keeping with competent counsel.
“6. That decisions of counsel to use a witness or not, or to allow a defendant to testify or not depend on many factors and that decision would vary from lawyer to lawyer and the Court cannot find fault in this regard.
“The Court found the defendant to be responsive to the Court in its general questioning on at least two occasions.
“That counsel for the defendant during preparation for and during the trial of this cause had to make many decisions of an infinite variety, and the trial strategy of counsel from commencement of the trial to its conclusion did not indicate inadequate or incompetent representation.
“The Court finds that counsel for the defendant were competent.
“Respectfully submitted. s/Paul J. Miller, Jr.
Presiding Circuit Judge 26th Judicial Circuit”
II
This Court has thoroughly reviewed the original trial record as well as the hearing included in the return to the remand and the various statements of the parties and testimony offered.
The two attorneys had agreed prior to trial that the Honorable Ruben King would act as lead counsel in the case. Mr. King made the following statement: (R. 5, 7 and 8).
[[Image here]]
“I think now as I did before trial that the defendant was innocent. I don’t believe that George Daniel did the killing today and I don’t believe he did it at the time of the trial because the evidence of the State that we have been able to gather by motions on discovery showed that there had been no powder residue. This was a chamber-type pistol and there were no powder residues on his hands or on his sweater. Also, he was supposed to have been in a fight with the deceased and was supposed to have shot six times and yet the fight took place in a ditch and there were no bullets whatsoever that have been found.
[[Image here]]
“So as a result, after the State had put on their evidence, Mr. Bernard and I discussed whether or not to put Mrs. Daniel on the stand and George’s sister and of course they had not seen the defendant in several months and they were really not in a position to testify as to his mental condition at the time of the commission of the crime.
[[Image here]]
“The only thing that they connected George Daniel with the pistol to begin with was a left print on the right side of the chamber and George Daniel is right-handed and if he was shooting the pistol the fingerprint would have been- different and which we brought it out in the trial was that there was no question that there was a scuffle. But if the man was shooting the pistol, of course, you would *947 have seen the right thumbprint somewhere on that pistol.
“Now, we were faced with this type of evidence and as a result everything that we could have put on the stand in defense of George Daniel was what the State had already proved or attempted to prove. All those documents from the Department of Forensic Science and all of the other evidence had been put on by the State.
“We argued on a motion to exclude the evidence, which was denied by the Judge, and that is where we stood at that time. Like I say, I don’t think that George Daniel did the killing, but I was not the one to decide.”
Further in his statement found in evidence, Mr. King indicated that he had conferred with the appellant’s relatives and friends in Texas and found that these people, who had seen him several months prior to the offense, in Houston, could not offer any evidence bearing on the killing of the police officer in Hurtsboro as none of them were present or had information as to his condition at that time. Mr. King and his co-counsel then agreed, in light of the fact that the appellant had been sent to Bryce’s in Tuscaloosa and had been found competent at the time he committed the offense and also competent to cooperate with his attorneys and stand trial, that the best defense was one of not guilty.
Both attorneys had gone to Hurtsboro and interrogated a number of witnesses and been to the crime scene, and in light of their preparation for trial, felt that the defense of simply “not guilty” was the proper one and sought to handle the guilt phase of the case based upon this.
Further, both attorneys felt that they would use, and did use, the appellant’s mother and sister at the punishment phase, since their views as to his condition prior to the time of the offense in question was one which would bear upon the punishment to be determined by the jury in the case.
It is true that Mr. Bernard stated for the Court that in his view Mr. Daniel was not competent to stand trial, and that he would like to have had a different party examine him. Nevertheless, in light of the findings submitted to the trial court from Bryce Hospital in Tuscaloosa, Alabama, he did agree that the defense of not guilty was the proper one in this case.
The trial court found that there was only one slight disagreement which was very minor, and occurred on record page 374 of the transcript. This is noted in the trial court’s findings.
From our review we affirm the findings of the trial court, as contrary to the contention of counsel on appeal, that the record does not sustain or support a determination that there was a conflict of interest between the two attorneys who represented the appellant during the original trial itself. Further, the record of the trial itself and of the hearing in the Circuit Court of Russell County, and on which a return has been herein filed, likewise does not sustain such an allegation.
Moreover, we have carefully examined both of these records and agree with the determination by the trial court that the appellant in this cause was thoroughly, competently and adequately represented in a proper legal sense, and that the evidence fails to establish that the appellant was denied the “reasonably effective” assistance of counsel as required by law. See Trammell v. State, 420 So.2d 855 (Ala.Cr. App.1982) and authorities therein cited. See also Clency v. State, 442 So.2d 148 (Ala.Cr .App.1983).
We have carefully examined this record and find that the trial court’s determinations were entirely proper. We find no error and affirm the determination that the trial attorneys did render effective and proper legal assistance to the appellant at his trial and this case is therefore due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.