This Court granted certiorari in this case under Rule 39 (c), A.R.A.P., to determine whether or not the Court of Criminal Appeals was correct in its conclusion that petitioner was not denied competent counsel in his trial on a charge of capital homicide, § 13A-5-31 (5), Code 1975, which trial occurred in November 1981. We affirm.
As the opinion of the Court of Criminal Appeals discloses, this Court had in an earlier decision granted certiorari, remanding this case to the Court of Criminal Appeals with directions to remand the case to the trial court for an evidentiary hearing on the issue of the defendant's challenge to the competency of his trial counsel and to direct the trial court to make findings of fact relating to that issue. The Court of Criminal Appeals was also directed to conduct an independent review of the trial *Page 949 
court's findings and to make a final determination of the competency-of-counsel issue. Ex parte Daniel, 459 So.2d 942
(Ala. 1982). Pursuant to that mandate, the Court of Criminal Appeals, 459 So.2d 943, remanded the cause to the trial court, and the trial court conducted the prescribed evidentiary hearing and made findings in accord therewith, holding that counsel for the defendant were competent. Those proceedings were reviewed by the Court of Criminal Appeals, which then issued an opinion upholding the trial court's judgment. Danielv. State, 459 So.2d 944 (Ala.Crim.App. 1984). Following that decision, this Court again granted certiorari.
The sole issue presented by counsel to this Court on this petition is:
 "Whether or not the failure to move for an independent psychiatric examination where defendant's mental competency is in question in a death penalty case constitutes ineffective assistance of counsel to such an extent that a new trial should be held."
The opinion of the Court of Criminal Appeals sets out the findings of the trial court. These were made after a hearing conducted by that court attended by Thomas Estes, chief deputy district attorney; Larry Roney, attorney for the defendant; Ruben K. King and Curtis Bernard, counsel for the defendant at his November 1981 trial; and witnesses Lillie Daniel and Hazel Bampoe. In addition to those findings, the opinion of the Court of Criminal Appeals contains a review of the evidence adduced in the trial court, together with its conclusion based thereon,
 "that the appellant in this cause was thoroughly, competently and adequately represented in a proper legal sense, and that the evidence fails to establish that the appellant was denied the `reasonably effective' assistance of counsel as required by law."
In making this determination, the Court of Criminal Appeals applied the "farce, sham or mockery" test and also the "reasonably effective assistance of counsel" test of Harris v.Oliver, 645 F.2d 327 (5th Cir. 1981).
Subsequent to the decision of the Court of Criminal Appeals on January 10, 1984, the United States Supreme Court inStrickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984), established guidelines for the review of claims of deficient or ineffective counsel:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Ibid. at 104 S.Ct. 2064. That Court added, at 2065-66:
 "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representations fell below an objective standard of reasonableness.
 "More specific guidelines are not appropriate. The Sixth Amendment refers simply to `counsel,' not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. See Michel v. New York, 350 U.S. 91, 101-102, 76 S.Ct. 158, 163-164, 100 L.Ed. 83
(1955). The proper measure of attorney performance remains simply reasonableness *Page 950 
under prevailing professional norms.
". . . .
 ". . . Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783
(1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' See Michel v. New York, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation omitted.]
". . . .
 "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
As made clear by the United States Supreme Court, an ineffective assistance claim requires not only an unreasonable error but also prejudice to the defense:
 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668, 66 L.Ed.2d 564 (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."
Id. at 2067. The defendant's burden was explained at 2068:
 "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
This burden was amplified at 2069:
 "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges *Page 951 
a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
Involving as it does the fundamental right of counsel at trial, this case properly should be reviewed under the standards adopted in Strickland, supra, even though the conduct complained of occurred prior to the date of that opinion. Accordingly, this Court has reviewed the record and briefs under those standards.
The first question to be addressed is whether or not the petitioner's counsel, in light of all the circumstances of this case, committed an act or omission "outside the wide range of professionally competent assistance" by failing to "move for [or procure] an independent psychiatric examination."[1]
This specific allegation of ineffectiveness must be viewed with the actual efforts of counsel to procure a mental examination before trial. The record affirmatively discloses that on April 30, 1981, Mr. Bernard, co-counsel for the defendant, filed a "Petition for Psychiatric Examination," which in part stated the following:
 "1. The defendant is indigent and has not the funds to pay the expenses of his defense, wherefore the above-named attorney has been appointed by this Court to represent him.
 "2. The attorney further believes that the client may be incapable of intelligently pleading to the merits of his case.
 "3. The defendant's attorney has reason to believe that his client is suffering from some mental disease, injury or congenital deficiency possibly rendering the client incapable of assisting and preparing a defense and standing trial.
 "WHEREFORE, counsel moves the Court for an order appointing, authorizing and directing a qualified psychiatrist at county or state expense to examine the mental condition of said defendant. Further, counsel prays that a report of such examination be submitted to the Court, attorney for defendant, and the District Attorney. Said examination needs to include but not be limited in scope to the following areas of inquiry, to-wit:
 "(a) Whether or not the defendant is capable of understanding the nature of the charges against him;
 "(b) Whether or not the defendant understands the object of the proceedings going on against him;
 "(c) Whether or not the defendant rightly comprehends his own condition in reference to such proceedings;
 "(d) Whether the said defendant, at the time he allegedly committed the crime with which he is charged, was of sufficient mental capacity to distinguish between right and wrong in comprehending the nature and quality of said act;
 "(e) Whether or not the defendant is in such condition of mind and memory as to be able to recall the evidence connected with the offense with which he is charged so as to enable him to advise counsel in a rational manner and to testify at the trial of this case if called upon to do so.
 "Defendant further prays a psychiatrist be required to determine in a report his opinion as to the defendant's condition at the time of the alleged crime with respect to the following principles of law:
 "1. Mental capacity; insanity. — A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity to appreciate *Page 952 
the criminality of his conduct or to conform his conduct to the requirements of law.
 "2. Delusional compulsion. — A person shall not be found guilty of a crime when at the time of the act, omission, or negligence constituting the crime, such person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.
 "3. Intoxication. — A person shall not be found guilty of a crime when at the time of the act, omission, or negligence constituting the crime, such person, because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act. Involuntary intoxication means intoxication caused (a) by consumption of a substance through inexcusable [sic] ignorance and (b) by coercion, fraud, artifice or contrivance of another person. Voluntary intoxication shall not be an excuse for any criminal act or omission."
 "4. Mistake of fact. — A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by misapprehension of fact, which, if true, would have justified the act or omission."
In response to this encompassing petition, the trial court ordered that the defendant be examined by the East Alabama Mental Health Center. A Dr. Rose, Ph.D., opined that there were "substantial questions regarding his capacity to stand trial." His full report, filed shortly thereafter, recommended admission to a state mental hospital for further evaluation, whereupon the trial court ordered the petitioner committed to the Alabama Mental Hospital in Tuscaloosa.
On September 8, 1981, a report of a psychiatric study of the petitioner was sent to the trial court. We quote pertinent portions of that report from the record:
 "The mental status examinations revealed diagnoses of Axis I, Malingering, V65.20; Axis II, No Diagnosis, V71.09; and Axis III, None.
 "The psychological assessment revealed that George Daniel made no real effort toward completing any of the psychological testing instruments. Mr. Daniel attempted to mislead the examiner on IQ measures and on Sentence Completions. In the examiner's opinion, Mr. Daniel was malingering at the time of the psychological testing.
 "Since Mr. Daniel's admission to Bryce State Hospital, he has been under the close observation, evaluation and review of qualified medical, psychiatric, psychological, and other evaluation and treatment staff. The most recent review was on Tuesday, September 1, 1981, and at that time, the Forensic Evaluation and Treatment Board was of the following opinions:
 "(1) George Daniel is presently competent to stand trial and to assist his attorney in preparing his defense. Mr. Daniel does understand the nature of the charge against him.
 "(2) George Daniel's alleged criminal conduct is not viewed as the product of mental illness. Therefore, George Daniel was not suffering from such a mental disease, defect, or derangement at the time of the particular act charged which prevented him from possessing the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.
 "(3) George Daniel was not suffering from a mental illness at the time of the particular act charged which prevented him from distinguishing right from wrong or prevented him from adhering to the right."
Notwithstanding this report, the record on remandment reveals that the petitioner's attorneys had their own doubts concerning the petitioner's mental capacity to stand trial. Mr. Bernard himself testified that it was still his opinion that Mr. Daniel was not competent to stand trial. Nevertheless, that record also discloses both an investigation of the facts of the *Page 953 
homicide and a consideration of possible defenses. Indeed, the record shows that defense counsel affirmatively considered the possible practical effect before a jury of a plea of not guilty by reason of insanity, and weighed the success of such a plea against the evidence contained in the psychiatric report. Under the circumstances, their decision not to move for another psychiatric evaluation was the exercise of reasonable professional judgment, and not an error which could be viewed as a deficiency in professional performance. Certainly, such conduct cannot be judged as an error "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 2064.
Having found no such error, we find it unnecessary to inquire into the prejudice component of the Strickland standards.Strickland, supra, at 2069.
The judgment of the Court of Criminal Appeals must be, and it hereby is, affirmed.
AFFIRMED.
All the Justices concur.
[1] Though not important to this question, it cannot go unnoticed that on the first appeal of this case, the petitioner asserted that a conflict of some sort existed between counsel which prevented him from receiving a fair trial. That assertion has been abandoned; the failure to move for the independent sanity hearing is now the basis for the allegation of incompetent counsel.