The appellant was convicted of the capital offense of rape when the victim is intentionally killed and sentenced to death by electrocution. This court affirmed his conviction on appeal, as did the Alabama Supreme Court. Dunkins v. State,437 So.2d 1349 (Ala.Crim.App.), affirmed, 437 So.2d 1356 (Ala. 1983). A petition for writ of certiorari to the Alabama Supreme Court was denied without opinion by United *Page 605 
States Supreme Court on February 21, 1984. Dunkins v. Alabama,465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).
The appellant filed a petition for writ of error coram nobis before the trial court which issued the judgment of conviction. Following a hearing on the allegations contained therein, the trial court denied the petition.
 I
The petitioner alleges that he was denied the effective assistance of counsel at trial and on appeal. He raises a number of issues which he claims proves such an allegation. Such issues are: (1) the failure to interview material and potential witnesses; (2) the failure of counsel to make a record on the systematic exclusion of blacks from the jury and the failure to pursue such matter on appeal; (3) the failure of counsel to pursue the issue of defendant's psychological condition; and (4) counsel's failure to adequately address the issues on appeal.
The United States Supreme Court has established guidelines for review of ineffective assistance of counsel claims. InDaniel v. State, 459 So.2d 948 (Ala. 1984), the Alabama Supreme Court recognized that in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court held:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland, supra 104 S.Ct. at 2064. The court further held:
 "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. "More specific guidelines are not appropriate. The Sixth Amendment refers simply to `counsel,' not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. See Michel v. Louisiana, 350 U.S. 91, 100-101, 76 S.Ct. 158, 163-164, 100 L.Ed. 83
(1955). The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.
". . .
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. CF. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783
(1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered *Page 606 
sound trial strategy.' See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance of any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
". . .
 "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
Strickland, supra 104 S.Ct. at 2065-2066.
To sustain a claim for ineffective assistance of counsel, one must not only show unreasonable error, but also prejudice to the defense. The court explained:
 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668, 66 L.Ed.2d 564 (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
". . .
 "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
Strickland, supra 104 S.Ct. at 2067-2068. The court further held:
 "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
Strickland, supra 104 S.Ct. at 2069. See also, Daniel, supra, at 949-951.
In reviewing the ineffectiveness claims advanced by the petitioner, we must follow the mandate of Strickland and apply its findings to the circumstances of this case.
 A
Petitioner alleges that his trial counsel was ineffective for his failure to interview one Ernest Jackson. Both at trial and on appeal, Dunkins contended that his confession was admitted in violation of Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona,451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), alleging that he was *Page 607 
interrogated after having requested counsel. Such claim was rejected by this court.
At the coram nobis hearing, Ernest Jackson testified that he was a co-worker of Dunkins. He was present when the deputies first approached Dunkins at his place of work. Jackson testified that, as the officers were arresting Dunkins, Dunkins told them that he could call his lawyer. Jackson was not called as a witness during trial of the cause and no such remark was brought out in evidence at trial. Evidence was elicited at trial that Dunkins had requested a lawyer later on the same day.
This testimony is the basis of the first claim for ineffective assistance of counsel, such being that trial counsel failed to interview key and potential witnesses.
Trial counsel testified that he had talked with Dunkins on numerous occasions prior to trial of this case. During these conversations Dunkins related a version of the rape and murder which paralleled the confession which was admitted into evidence. Counsel further questioned Dunkins extensively about when Dunkins requested an attorney. Counsel felt that such was important for the basis to attempt to have the confession suppressed. Dunkins never told trial counsel that he requested an attorney at his place of employment. Further, counsel testified that Dunkins indicated Jackson would have nothing to offer in defense of Dunkins.
"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, supra 104 S.Ct. at 2066.
"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. See UnitedStates v. Decoster [199 U.S. App.D.C. 359] 624 F.2d [196], at 209-210 [(1976)]." Strickland, supra 104 S.Ct. at 2066-2067.
Applying the standard enunciated in Strickland, Dunkins' trial counsel's actions in not interviewing Ernest Jackson were reasonable. He based his decision on information obtained from Dunkins and as a result Dunkins has failed to meet the first prong of the Strickland test. Counsel's action did not fall below an objective standard of reasonableness under professional norms. Having failed to meet the first prong of the test it is unnecessary to determine the prejudice requirement. Even if *Page 608 
Dunkins had met the first requirement the record does not support his claim that such action was prejudicial to his cause.
 B
Dunkins argues that trial counsel was ineffective in failing to make a record on the systematic exclusion of blacks from the jury and the failure to pursue such matter on appeal.
Trial counsel testified that there were several reasons he did not pursue the issue of systematic exclusions of blacks from the jury in this cause. The first reason was that such a claim was virtually impossible to prove and had been attempted many times in Jefferson County without success. See Allen v.State, 414 So.2d 163 (Ala.Crim.App. 1982). Counsel's second reason for not pursuing this matter was that he did not feel that the State had used their peremptory strikes improperly in this cause. He further stated that he did not pursue the matter on appeal because he had several good issues and did not want to "clutter" his brief with a meritless claim.
"The Sixth Amendment does not require errorless counsel or counsel judged ineffective by hindsight." Hoppins v. State,440 So.2d 1125, 1127 (Ala.Crim.App. 1983). "An adequate defense in the context of the constitutional right to counsel does not mean that counsel will not commit what may later prove to be tactical errors, and matters of trial strategy, in the absence of a clear showing of improper or inadequate representation, will be left to the judgment of trial counsel." Bridges v.State, 391 So.2d 1086, 1091 (Ala.Crim.App. 1980).
Applying the standard enunciated in Strickland, and following a careful review of the proceedings, we fail to see how counsel's actions in this cause were unreasonable or prejudicial. "Every trial presents a myriad of possible claims. Counsel might have overlooked or chosen to omit respondent's due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not ensure that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558,71 L.Ed.2d 783 (1982).
 C
Dunkins argues that his trial counsel was ineffective for failing to pursue the issue of his psychological condition.
The record shows that trial counsel affirmatively considered the possible practical effect before a jury of a plea of not guilty by reason of insanity, and weighed the success of such a plea against the evidence contained in the psychiatric report compiled by Bryce Hospital and a review of one Dr. Estock's evaluation of Dunkins. Counsel further based his decision not to pursue such a defense on discussions with Dunkins' parents. They informed counsel that Dunkins was a slow learner and had been in special education classes. However, Dunkins was able to hold down jobs.
Counsel further testified that he had talked with Dunkins on many occasions prior to trial. Based on these meetings, counsel decided to reject using Dunkins' mental condition as a defense. Counsel stated that, based on his own experience as a criminal defense attorney, he had found that mental condition defenses were inflammatory unless strongly supported. Counsel's professional conclusion was that there was no viable defense concerning Dunkins' mental condition.
Under the circumstances, counsel's decision not to pursue such a defense was the exercise of reasonable professional judgment, and not an error which could be viewed as a deficiency in professional performance. Certainly, such conduct cannot be judged as an error "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra 104 S.Ct. at 2064.
Having found no such error, it is unnecessary to inquire into the prejudice component *Page 609 
of the Strickland standards. Strickland, supra104 S.Ct. at 2069.
 D
Dunkins argues that counsel was ineffective due to his failure to adequately address the issues on appeal. He further argues that counsel was ineffective on appeal for "relying too much on assistance of a law student" in drafting the appellate brief; for failing to file a new brief in the Alabama Supreme Court; for not requesting an oral argument; and for submitting a fee declaration requesting reimbursement for only 28.75 hours of appellate work.
Trial counsel testified that in preparing his brief for appeal he had the assistance of a law clerk whose role was to provide preliminary assistance. Counsel stated that he himself did most of the work and personally drafted basically all of the materials filed in the case. He personally selected the issues which he thought had the best chance of succeeding on appeal.
Regarding the brief filed with the Alabama Supreme Court, counsel stated that he submitted his Court of Criminal Appeals brief to the Supreme Court virtually unchanged because the issues were couched as persuasively as they could be and the law applicable to the issues had not changed since the time he had drafted the Criminal Appeals brief.
Counsel did not request oral argument on appeal because he did not feel anything would be gained from doing so.
Regarding his time declarations, he stated that the time amount presented for reimbursement was a minimum figure which did not reflect the full amount of time spent preparing for appeal. Counsel did not declare the full amount of time actually spent because he did not think he would be fully compensated for his time.
A careful review of the record does not reveal that counsel was ineffective in a constitutional sense. Counsel's performance and effort fall within prevailing professional norms as seen by this court. Moreover, Dunkins has failed to prove that counsel's effort in this cause prejudiced him in any way. Dunkins has simply failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra 104 S.Ct. at 2068.
In summary we must hold that Dunkins has failed to show this court that he was denied the effective assistance of counsel either at trial or on appeal.
 II
Petitioner alleges that the admission of his confession into evidence was in violation of his constitutional rights. This court and the Supreme Court of Alabama decided on original appeal that Dunkins' confession was not in violation of Mirandav. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880,68 L.Ed.2d 378 (1981). Dunkins now argues that the testimony of Ernest Jackson constitutes newly discovered evidence and the confession was wrongfully admitted under Edwards, supra. He further argues that his confession was invalid because he did not voluntarily waive his rights due to his mental condition.
 A
Ernest Jackson testified that when the officers came to his and Dunkins' place of employment the very first time, Dunkins told the officers that he could call his lawyer. This "new evidence" does not change the finding enunciated by this court on original appeal. We stated:
 "The substance and intent of Edwards were not violated. After the defendant requested counsel all questioning concerning the facts of the case ceased. The defendant's constitutional rights were not violated by the fact that Deputy Smith sought biographical information from the defendant after the defendant had requested counsel. Varner v. State, 418 So.2d 961, 962 (Ala.Cr.App. 1982). Miranda does not erect "an absolute per se bar on any conversation with the accused *Page 610 
by investigating officers after the former has requested counsel. It only inhibits investigative interrogation related to the specific crime itself'. United States v. Grant, 549 F.2d 942, 946 (4th Cir.), cert. denied, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977).
 "After the defendant was not identified in a lineup, he was released from custody and remained free for more than twenty-four hours. Sometime during that time he indicated to the police that he would be willing to talk to them. This is just the opposite of the facts in Edwards where Edwards, after having requested to see counsel, was told that `he had' to talk to the police. This case is clearly distinguishable from Edwards because of the critical facts that the defendant was released from custody after he requested counsel and that he expressed a complete willingness to talk with Deputy House. Swint v. State, 409 So.2d 992 (Ala.Cr.App. 1982); Warrick v. State, 409 So.2d 984 (Ala.Cr.App. 1982)."
Dunkins v. State, supra at 1352.
Even adding Jackson's testimony to the facts enunciated above, petitioner's confession was still not obtained in violation of Edwards.
 B
Regarding the petitioner's mental condition, this court found in our original opinion that there had "been both express and explicit oral and written waivers of Miranda". Dunkins, supra at 1352. We further held:
 "We have thoroughly reviewed the totality of the circumstances surrounding both statements given by the defendant, including the fact that he was nineteen years old and almost illiterate. Our assessment of these facts convinces us that both statements were completely voluntarily given after a knowing and intelligent waiver of constitutional rights."
Dunkins, supra at 1353.
Dunkins argues that this conclusion is invalid because Bryce Hospital had evaluated him to be functioning "at the high mild range of mental retardation with his adaptive behaviors falling within the borderline range."
The circumstances surrounding the petitioner's confession indicate that he did in fact understand and voluntarily waive his rights. Moreover, a person functioning in the high mild range of mental retardation, such as the petitioner, can intelligently waive their rights. See Davis v. State,440 So.2d 1191 (Ala.Crim.App. 1983) and Corbin v. State, 412 So.2d 299
(Ala.Crim.App. 1982). It is the opinion of this court that petitioner did in fact voluntarily waive his rights and his confession was properly admitted.
 III
Petitioner alleges that the trial court below improperly denied his claim of juror misconduct.
Petitioner's father testified that he was present at petitioner's trial when the jury was selected. He stated that he was seated on the fourth bench, to his right as he faced the courtroom, from the witness stand. He was seated on a bench right behind venire members. During this time he overheard a woman seated in front of him say that she could tell Dunkins was guilty by the way he looked. This woman was later chosen as a juror for his son's trial. He described the woman's appearance.
He stated that he never told petitioner's trial attorney of this occurrence even though he talked with counsel several times after this day and during trial. He never told the petitioner what he heard the woman say. The only person he told was his wife who was seated next to him.
Petitioner's mother testified that she was in the courtroom the day the jury was chosen for her son's trial. Before the jury was chosen, her husband told her that a woman sitting in front of them had said she could tell Dunkins was guilty by looking at him. She described the woman who allegedly made this statement and stated that this woman served on her son's jury. *Page 611 
Mrs. Dunkins testified that she told some of her friends about this statement, but never told petitioner's attorney about it even though she knew it was wrong for a juror to say such a thing before the trial started. She further stated that she knew petitioner's trial counsel was trying to help her son and that he was on her son's side. She testified that she and her husband were sitting on the third or fourth bench on the right side of the courtroom, as she faced it, when the statement was allegedly made.
James Miller testified that he has been Judge Jasper's bailiff for 13 years. He was present during the entire Dunkins trial.
He stated that he was responsible for seeing that prospective jurors are in the proper place in the courtroom before jury selection begins. The first group of venire members are seated in the jury box. The second group is seated on the first two benches on the left side of the courtroom as he faced it from the witness box. In a capital case, an additional group of jurors is seated behind the second group, with an empty bench separating the two groups. A space of one or more empty benches is left behind the jurors and in front of any spectators. These procedures were followed at Dunkins' trial. He further stated that no spectators could have been seated directly behind prospective jurors in the trial of this case. He further testified that he recalled seeing petitioner's father seated on the opposite side of the courtroom from where petitioner's father had testified he was seated.
Judge Jasper stated, on the record, that he personally recalled that Mr. Dunkins was not seated directly behind a juror and that what Mr. Dunkins described in his testimony "could not have occurred in the manner in which he said it occurred." (R. 57-58). He further stated that the seating of the venire at the trial had been 12 in the jury box with two extras seated within the rail; seven on the first row, seven on the second row, an empty bench, then seven in each of the next two rows, and then an empty bench. Ten extra jurors were seated on the other side of the courtroom and there was an empty bench between those extras and any spectators. (R. 58).
A review of the record reveals that the trial court acted properly in denying the petition on these grounds.
First, a judge's stated personal knowledge may furnish an adequate and proper ground for denying a coram nobis petition. See Lewis v. State, 435 So.2d 154, 155 (Ala.Crim.App. 1983) andHolsclaw v. State, 429 So.2d 1185 (Ala.Crim.App. 1983).
Secondly, a matter of such importance should have been brought to the trial attorney's attention, if it occurred.
Petitioner further argues that he should have been allowed to subpoena the jurors from his trial and have his present attorney put them on the witness stand. Such a procedure may have been proper had the allegation been shown to have some merit. However, the testimony reveals that the claim is without merit. Therefore, it was proper to deny this motion.
 IV
The appellant argues that the trial court erred in refusing to address the merits of some thirteen claims contained in his petition.
 A
The appellant first alleges in his petition that the testimony of one Michael Beckham was "likely false". The record indicates that this claim was raised at trial and overruled. Such claim was not pursued on direct appeal.
"Since the facts were known by the appellant and objected to at trial, but not presented as an issue on appeal, they cannot sustain a proceeding for coram nobis relief. The writ is appropriate only when the petitioner's claim is based on facts which were not known and could not have been discovered with the exercise of reasonable diligence at the time of trial. (Citations omitted). `Facts known to the accused *Page 612 
debar him from seeking coram nobis.' Arledge v. State,57 Ala. App. 553, 555, 329 So.2d 613, 615, cert. denied, 295 Ala. 390, 329 So.2d 616 (1976)." Summers v. State, 366 So.2d 336,340 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979).
 B
The appellant alleges that the State failed to properly corroborate his confession by proving the corpus delicti of the crime prior to the introduction of the confession into evidence. He also argues that the death penalty is disproportionately severe and excessive punishment in this case.
Both of these claims were raised and rejected on direct appeal. See Dunkins v. State, 437 So.2d 1349 (Ala.Crim.App.), affirmed, 437 So.2d 1356 (Ala. 1983), cert. denied,465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).
"Petitions for writ of error coram nobis are properly denied where the matters attempted to be raised were fully reviewed on appeal from the judgment of conviction." Summers, supra at 340. See also, Johnson v. State, 439 So.2d 1340 (Ala.Crim.App. 1983); Bies v. State, 418 So.2d 940 (Ala.Crim.App. 1982). The court below properly refused to consider and decide these issues.
 C
The court below further refused to consider or address the following issues contained in the petition: (1) lesser included offense instruction claims; (2) claim alleging mandatory operation of the capital punishment statute; (3) allegations that the death penalty has been arbitrarily applied in Alabama; (4) allegations that the death penalty is discriminatorily applied; (5) allegations that petitioner was not afforded adequate notice of aggravating circumstances; (6) allegations concerning the burden of proof at the sentencing stage proceeding; (7) allegations that Alabama does not afford comparative appellate review of death sentences; (8) allegations that electrocution is an unconstitutional method of execution; (9) allegations that the death penalty is an unconstitutionally excessive punishment; and (10) that the petitioner was denied a trial by an impartial jury made up of a representative cross-section of the community.
The failure to raise an issue at the original trial or on the subsequent appeal bars the remedy of coram nobis review. Further, the petition for writ of error coram nobis does not lie to review claims that could have been, but were not, raised at trial or on appeal. See Ex parte Jacques, 409 So.2d 885
(Ala. 1982); Hoppins v. State, 440 So.2d 1125 (Ala.Crim.App. 1983); Summers, supra. Ex parte Ellison, 410 So.2d 130 (Ala. 1982).
A careful review of each of the allegations reveals that the trial judge properly refused to consider or decide these claims on the merits.
The evidence presented to this court reveals that the petitioner has failed to establish any reason for impeaching the original judgment of conviction. The judgment of the court below is therefore due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.