PATTERSON, Judge.
On January 17, 1985, the Montgomery County Grand Jury returned ten separate indictments against appellant, Gary O. Porter. One was for burglary in the first degree, in violation of § 13A-7-5, Code of Alabama 1975 (Case No. 85-105K); three were for sodomy in the first degree, in violation of § 13A-6-63 (85-108K, 85-110K, 85-111K); and one was for robbery in the first degree, in violation of § 13A-8-41 (85-113K); all involving one victim. One indictment was for rape in the first degree, in violation of § 13A-6-61 (85-106K); two for sodomy in the first degree, in violation of § 13A-6-63 (85-107K, 85-109K); and one was for robbery in the first degree, in violation of § 13A-8-41 (85-113K); all involving another victim. One indictment was for robbery in the first degree, in violation of § 13A-8-41 (85-114K), involving a third victim. On motion of the State, all ten cases were consolidated *854 for trial. Appellant was found guilty in all ten cases, after a jury trial, and sentenced in each case as a habitual offender to life imprisonment without the possibility of parole. In support of the State’s invocation of the Habitual Felony Offender Act, it proved four prior felony convictions. The prior convictions were admitted by appellant. The trial court ordered that the ten life without parole sentences be served consecutively. In addition, the trial court ordered appellant to pay restitution in the amount of $732.47 to one victim, $347.10 to another victim, and $70.00 to a third victim. The trial court also ordered appellant to pay $10,000.00 to the Victim’s Compensation Commission of the State of Alabama, and court costs and attorney’s fees.
The ten cases for which appellant stands convicted, arose out of a series of events which occurred on the night of December 14, 1984, at a residence in Montgomery. The husband of one of the victims had died earlier in the evening at a local hospital, and she had gone to the hospital with her daughter and granddaughter. The three women returned to the home of the daughter around 3:00 a.m., and sat around the kitchen table discussing funeral arrangements. The husband of the daughter was out of town on business. Suddenly, a man, later identified as appellant, appeared in the doorway between the kitchen and the den. Over his head, he had a pillowcase with holes cut in it for his eyes. He was also wearing the daughter’s sweat shirt with hood, and the hood was pulled over the top of the pillowcase. He was armed with a curved knife. He demanded money and jewelry. He took money from the three women and forced the daughter to give him a diamond ring she was wearing. We do not deem it necessary to cite the details of the other acts inflicted on the three women by appellant. After sexually abusing two of the women for an hour, suffice it to say, the evidence of these acts, as introduced by the prosecution, was sufficient to support appellant’s convictions on all indictments. Appellant then left after warning the three women that if they called the police, he would return and kill them. There was a dog at the victim’s residence, and appellant told them that he could make friends with dogs. The grandmother was seventy-three years old, the daughter, thirty-eight, and the granddaughter, sixteen. The grandmother was forced to witness the entire episode.
The police were called, and an investigation commenced. It was discovered that the assailant had gained entry to the house by forcing a window, that he had taken the pillowcase from the bedroom and had cut holes in it with scissors he found in the house, and that he had taken several items of jewelry belonging to the daughter and granddaughter.
Prior to the date of the incident, the police department had received a bulletin from Georgia authorities to be on the lookout for a person fitting the description and modus operandi of the person who subsequently committed the Montgomery crime. After conferring with Georgia authorities and getting a wire-photograph of the wanted person from Georgia, the police checked the Montgomery motels. A clerk at the Airport Holiday Inn identified the suspect and informed the police that the suspect had been a guest in the motel for several days. Shortly thereafter, the suspect was located at a local nightclub and placed under arrest. A diamond ring, which was later identified as belonging to one of the victims of the Montgomery crime, was found on his person when searched. He was identified as Gary O. Porter, the appellant. When arrested, he stated that his name was Gary Hall. He had registered in the motel as Gary Hall.
After being properly advised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), appellant signed a written waiver of those rights along with a written consent to search his motel room at the Holiday Inn. Most of the jewelry taken from the Montgomery’s victims’ home was recovered from his room, and a curved knife was found, which was identified at trial by one of the victims as being the knife used in the commission of the crimes. *855 Although the victims never got a look at their attacker’s face during the incident, one victim, the daughter, positively identified appellant as the attacker by his hands, and all three victims positively identified appellant’s voice as that of the attacker. A person fitting the description of appellant was observed, several hours prior to the incident, at a filling station about one and one-half miles from the scene of the crimes. The station attendant observed a tatoo on the person’s left hand which is similar to a tatoo on appellant’s left hand. The attendant remembered that she had asked for identification due to the purchase of beer, and the person presented a Georgia driver’s license which showed the licensee’s date of birth to be January 1955. She remembered this date because it was the birthday of her sister. Appellant’s birth date was in January 1955. On the day after the incident, appellant tried to sell the motel desk clerk and to a waitress in a nearby Waffle House restaurant a diamond ring similar to the one taken from one of the victims and found on him at his arrest.
The State introduced evidence showing that, while awaiting trial, appellant attempted to escape from the Montgomery County Jail. He and another inmate threw some type of powder in the eyes of a jailer and fled. During the attempt, appellant suffered a fall and sustained severe injuries. At the time of trial, appellant was in a wheelchair.
Appellant testified in his own behalf. He admitted several prior felony convictions. He testified that he had come to Montgomery to buy stolen property and that he lived by “fencing” property. He denied any involvement in the Montgomery incident and claimed that he had never been in the part of town where the crimes occurred. He claimed that he had obtained the jewelry, including the diamond ring, from a Glen Hall and that he had met Hall several days before in Anniston. He did not know Hall’s whereabouts. He stated that he had also obtained the knife from Hall in exchange for a pistol. He denied being at the service station in the vicinity of the victim’s home, but admitted attempting to sell the diamond ring to the motel clerk and the waitress.
Appellant raises only one issue on appeal. He contends that he was denied reasonably effective assistance of counsel during his trial in violation of his constitutional rights under the Fifth and Fourteenth Amendments, and Article 1,- § 6, Alabama Constitution (1901). He specifically bases his contention on the ground that trial counsel failed to properly object to or cross-examine the police officers’ testimony concerning his consent waiver which permitted the police to search his motel room.
After appellant’s arrest, and while he was being transported in a patrol car to police headquarters, he was properly advised of his Miranda rights. He acknowledged that he understood his rights. No threats or promises were made to him. After being advised of his rights and acknowledging that he understood them, he stated, “I have one thing to ask. How did you find me?” An officer said, “Good police work,” and appellant stated, “I know. It was the clerk at the motel.” After arriving at police headquarters, appellant was read his Miranda rights again and he signed a written waiver of those rights. No promises or threats were made. The written waiver of rights signed by appellant stated the following: “I fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promises or threats have been made to me by anyone and no pressure of any kind has been made against me by anyone.” After receiving the Miranda warnings the second time and signing the written waiver, appellant stated that he had obtained the diamond ring found on his person from a Glen Hall, and he gave the police a description of Hall which matched his own description. He further stated that he had come from Anniston in his own automobile and had loaned it to a woman named “Jennifer” whom he had met at the Silver Dollar Lounge. He stated that he had not seen the automobile since. He further told the officers that he could break into any home *856 he wanted to and could make friends with dogs. Subsequently to being warned of his Miranda rights at the police headquarters, he signed a written consent for the police to search his room at the Holiday Inn. The written consent stated the following:
“I, Gary Owen Porter, have been informed of my constitutional rights not to have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search hereby authorize Louis Perdue, E.B. Spivey and other detectives of the Montgomery Police Department, Montgomery, Alabama, to conduct and complete a search of my premises located at Holiday Inn Airport Room 427[.] These detectives are authorized by me to take from my premises any property which they may desire. This written permission is being given by me to the above named detectives voluntarily and without threat or promises of any kind.”
An officer testified that no promises or threats were made in obtaining appellant’s consent to search his room.
Appellant questions whether the consent to search given by him was voluntary. He contends that there was no testimony that appellant was told that he had a right to refuse permission for the search. He asserts that he was intimidated by the presence of the officers when he gave his consent and that he should be judged, in this regard, as an “average person.” He further argues that his mere presence in the nightclub indicated that he was under the influence of alcohol at the time he signed the consent to search. He argues that it is preposterous for anyone to believe that he would freely and voluntarily consent to a search of his room under the circumstances. The main thrust of his argument is that his counsel’s failure to object to his consent to search and to cross-examine the officers in reference to it resulted in a failure to develop evidence of coercion and involuntariness which amounted to ineffective assistance of counsel. The record shows that no objection was made to the introduction of the evidence showing the consent to search the motel room, and the officers were not cross-examined in reference to the obtaining of appellant’s consent. Whether this constituted ineffective assistance of counsel to such an extent that a new trial should be held is the sole issue presented in this appeal.
In resolving this issue, we apply the standards established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed in Alabama. Ex parte Daniel, 459 So.2d 948 (Ala.1984); Ex parte Baldwin, 456 So.2d 129 (Ala.1984); Dunkins v. State, 489 So.2d 608 (Ala.Cr.App. 1985), cert. quashed, 489 So.2d 603 (Ala. 1986). The Alabama Supreme Court, in Baldwin, 456 So.2d at 134, set out the standards and burden of proof, as follows:
“The burden of proof is upon the petitioner. The United States Supreme Court, in a very recent decision, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), explicitly described the burden of proof with regard to this claim. First, petitioner must show that counsel’s performance was so deficient as to fall below an objective standard of reasonableness. Counsel’s conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct. Second, petitioner must show that counsel’s deficient performance prejudiced the defense and deprived petitioner of a fair trial. Prejudice is shown when, absent the errors, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt.”
In the instant case, we have reviewed the record in the light of the applicable standards and find no merit in appellant’s contention. The State clearly established that the consent to search form was voluntarily signed by appellant and that appellant voluntarily consented to the search. Appellant did not testify at the suppression hearing and, at no time in the proceedings did he contend that the consent was involuntarily given. The signed consent form, it *857 self, advised appellant of his constitutional right to refuse to consent to a search without a warrant. Appellant was properly advised of his Miranda rights on two occasions shortly before giving the consent to search and had signed a written waiver of his Miranda rights. There was no evidence that appellant was intoxicated or under the influence of alcohol in any manner when he was advised of his rights and executed the waivers. There was no evidence that appellant was intimidated while in custody, and no evidence from which it could be concluded that there was an atmosphere of intimidation or coercion at the police headquarters. Given appellant’s background and record, it cannot be seriously argued that he was just an “average citizen” and intimidated by the mere presence of police officers. He was very familiar and experienced with the police and their activities.
Appellant’s defense was that he had nothing to do with the commission of the crimes and that the jewelry and knife found on his person and in his room were given to him by a Glen Hall. It can be reasonably argued that defense counsel chose not to pursue any question of volun-tariness of appellant’s consent because the theory of defense was that Hall, rather than appellant, committed the crimes. On this theory, any attempt to question appellant’s initial cooperation with the police would have detracted from and diminished the credibility of his theory that Hall was the guilty party. It is obvious why he did not pursue this course at trial. His attorney’s decision not to challenge the validity of the search was a matter of trial strategy. “[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95.
A consideration of the situation confronting defense counsel in this case leads inescapably to the conclusion that counsel’s forbearance in not objecting to and cross-examining witnesses in regard to the testimony about appellant’s consent to search was not inadvertent, but an exercise of reasonable professional judgment, and not an error which could be viewed as a deficiency in professional performance. Counsel’s conduct in this regard cannot be judged as an error “so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
The State correctly points out in its brief that there was sufficient probable cause to obtain a search warrant to search the motel room. The officers could have merely secured the room and obtained the search warrant and ultimately would have legally found the evidence in any event. Even if shown that the consent to search were improperly obtained, the inevitable discovery exception to the exclusionary rule would have applied in this case and the evidence in the room would have ultimately been seized and introduced. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Thus, it can be argued that any effort on the part of appellant’s attorney to attack the voluntariness of the consent to search would have been futile.
Defense counsel’s action did not fall below an objective standard of reasonableness under professional norms. He performed in a professionally competent manner, and his performance fully measured up to the requirements necessary to make the adversarial testing process work in this case. Appellant’s counsel did the best he could with a difficult case, and the record reflects that he had appellant’s interest in mind at all times. The evidence against appellant was overwhelming. Appellant insisted on testifying before the jury on his own behalf, over the wise objection of his counsel, and his testimony was weak and unconvincing.
Having failed to meet the first prong of the standard set out in Strickland v. Washington, it is unnecessary to deter *858 mine the prejudice requirement; however, even if the first requirement had been met, the record does not support a conclusion that the action was prejudicial to appellant’s case.
For the foregoing reasons, the judgment of the court below is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.